1

2

3

4                    UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF WASHINGTON
5                            AT TACOMA

6   FOREMOST INSURANCE COMPANY
    GRAND RAPIDS MICHIGAN,                    Case No. 3:22-cv-5477-TLF
7
                           Plaintiff,         ORDER DENYING MOTIONS FOR
8        v.                                   SUMMARY JUDGMENT

9   ERIK GUILLEN, et al.,

10                         Defendants.

11

12        This matter comes before the Court on plaintiff's motion for summary judgment

13  regarding the number of accidents, and defendants' motion for summary judgment

14  regarding waiver, estoppel, and number of accidents. Dkts. 10, 32. The Court has

15  considered the evidence submitted by both parties, and the briefs and argument

16  submitted for each motion; the Court denies both motions for summary judgment

17  regarding the number of accidents, because genuine questions of fact remain regarding

18  the number of accidents in this case. With respect to the defendant's motion for

19  summary judgment on the issues of waiver, and estoppel, the Court denies both

20  motions for summary judgment.

21                FACTUAL AND PROCEDURAL BACKGROUND

22        The following facts are undisputed.

23

24

25

ORDER DENYING MOTIONS FOR SUMMARY
JUDGMENT - 1

On September 16, 2021, defendants were involved in a motor vehicle accident in Vancouver, Washington that was caused by an uninsured intoxicated driver. Dkt. 10-2 Police Report (Sealed); Dkt. 22, Declaration of Diana Andrade, at ¶ 3-4. The police report indicates that the posted speed limit at the location of the incident was 35 mph. Dkt. 10-2 (Sealed) at 6. The intoxicated drivers' event data recorder (EDR) indicated that between 2 and 5 seconds before the initial crash the vehicle was traveling between 67 mph and 70 mph. *Id.*; Dkt. 36-7, CDR Report. Two seconds before the first impact, the vehicle's brakes engaged, slowing the vehicle on impact to 59 mph. *Id.*

The report indicates that after the first crash, there was at least one other collision between the same two vehicles at 36 mph. Dkt. 10-2 at 7; Dkt. 36-7. The other impact occurred 4 seconds after the initial impact. *Id.*

After the collisions, the driver drove into oncoming traffic before continuing in the southbound lane. Dkt. 10-2 at 1. The police report concluded the events were the result of the uninsured driver's "driving under the influence, his excessive speed, and his inability to respond or react to a vehicle traveling in front of him due to his level of intoxication." *Id* at 7.

Defendants are insured under Policy Number G01 0294646 03. Dkts. 10-4, 36-1, Certified Policy. The personal injury protection (PIP) coverage was $10,000 per person for medical costs, and uninsured motorist bodily injury (UMBI) coverage was $100,000 per person and $300,000 per occurrence, for bodily injury damages. *Id.* Under the policy, plaintiff agreed to cover the defendants for PIP and UMBI on a "per accident" basis. *Id.* at 5, 10-11, 18-20, 24, 29-31, 48. With respect to the PIP provision of the policy, an accident is "a sudden, unexpected and unintended event that arises out of the

ORDER DENYING MOTIONS FOR SUMMARY
JUDGMENT - 2

ownership, maintenance, or use of an auto as an auto, and that causes bodily injury or property damage during the policy period." *Id.* at 10. The UMBI portion of the policy states that an accident is "an occurrence that is unexpected and unintended from the standpoint of the insured person." *Id.* at 10, 25.

Defendants made a claim to plaintiff for personal injury protection and uninsured motorist benefits. Dkt. 10-5, Letter to defendants (9/20/2021); Dkt. 25-3, Letters to defendants (1/26/2022; 2/24/2022); Dkt. 25-4, Letter to defendants (10/12/2021; 11/23/2021). On October 5, 2021, defendants' counsel emailed the police report to Foremost, and requested review "for a second, or possibly third, layer of UM/UIM coverage and PIP coverage and advise". Dkt. 10-6 at 2-3; Dkt. 36-4, at 1. On October 25, 2021, defendants sent by post a request that Foremost provide a written denial of coverage, with a detailed explanation and supporting information. Dkt. 10-6 at 4-5. On October 27, 2021, defendants emailed Foremost, requesting written confirmation of coverage. Dkt. 10-7, and Dkt. 36-4 at 3, email to plaintiff (10/27/2021). Defendants responded and explained that their position was two separate and distinct incidents occurred, and that the two collisions were not a continuous event. Dkt. 10-7, at 2-3.

Plaintiff "opened and paid a PIP exposure" for defendants Eric Guillen and Diana Andrade. Dkt. 25-3, at 1-2 (Letter from James Rash, Foremost Med/PIP Claims Representative, regarding claims for Eric Guillen (1-26-2022), and (2-24-2022)); Dkt. 25-4 at 1-2 (Letter from James Rash, Foremost Med/PIP Claims Representative, regarding claims for Diana Andrade (10-12-2021) and (11-23-2021)).

Plaintiff did not open or pay a UMBI exposure for two accidents; plaintiff confirmed in a letter to defendants "that there was only one accident and not two

accidents for the purposes of . . . UIM coverage." Dkt. 36-6, letter of Rory W. Leid, III to Benjamin P. Melnick (July 1, 2022), at 1.

The parties' assertions regarding whether there are genuine disputes of material fact, will be discussed as relevant to the legal analysis, below.

<u>DISCUSSION</u>

Summary judgment is supported if the movant "shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure (FRCP) 56 (a). When more than one party files a motion for summary judgment concerning the same claim, the district court is required to independently review the evidence submitted on both motions, and decide whether there are genuine disputes of material fact; the Court is not bound by the parties contentions about whether there are, or are not, any material factual issues. *Fair Housing Council of Riverside County., Inc. v. Riverside Two,* 249 F.3d 1132, 1136 (9th Cir. 2001). When considering summary judgment motions filed by different parties, the court must "giv[e] the nonmoving party in each instance the benefit of all reasonable inferences." *Am. Civil Liberties Union of Nev. v. City of Las Vegas,* 466 F.3d 784, 791 (9th Cir. 2006). The purpose of summary judgment is "to isolate and dispose of factually unsupported claims or defenses. . .." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-324 (1986).

The moving party bears the initial burden to demonstrate the absence of a genuine dispute of material fact for trial. *Celotex,* at 323. A genuine dispute concerning a material fact is presented when there is sufficient evidence for a reasonable jury to

1    return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

2    252 (1986); *Acosta v. City National Corporation,* 922 F.3d 880, 886-887 (9th Cir. 2019).

3    In this context, materiality means the fact is "relevant to an element of a claim or

4    defense and whose existence might affect the outcome of the suit"; thus, materiality is

5    "determined by the substantive law governing the claim." *T.W. Elec. Serv., Inc. v. Pacific*

6    *Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987); *see also, Acosta,* 922 F.3d

7    at 887 (the court asks "'whether reasonable jurors could find by a preponderance of the

8    evidence that [the moving party] is entitled to a verdict – whether there is evidence upon

9    which a jury can properly proceed to find a verdict for the party producing [the

10   evidence], upon whom the onus of proof is imposed.'" (quoting, *Anderson v. Liberty*

11   *Lobby,* 477 U.S. at 252)).

12   The non-moving party is required to show that genuine issues of material fact

13   "'can be resolved only by a finder of fact *because they may reasonably be resolved in*

14   *favor of either party.'" California Architectural Building Prods., Inc. v. Franciscan*

15   *Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson,* 477 U.S. at

16   250) (emphasis in original)). The non-moving party must make a showing that is

17   sufficient to establish the existence of any element for which the moving party has

18   successfully met its initial burden of showing an absence of a genuine dispute of

19   material fact. *Celotex,* 477 U.S. 317, 322-323. When the Court considers a motion for

20   summary judgment, "[t]he evidence of the non-movant is to be believed, and all

21   justifiable inferences are to be drawn in [their] favor." *Anderson,* at 255. Yet the Court is

22   not allowed to perform the jury's function – the Court may not weigh evidence, draw

23   legitimate inferences from facts, or decide credibility. *Id.*

24

25

1    The Court may not disregard evidence solely based on its self-serving nature.

2  *Nigro v. Sears, Roebuck & Co.,* 784 F.3d 495, 497 (9th Cir. 2015). "The district court

3  can disregard a self-serving declaration that states only conclusions and not facts that

4  would be admissible evidence." *Id.*

5        A.  Motion to Strike

6        Plaintiff's reply brief (for its summary judgment motion) and response brief (for

7  defendants' summary judgment motion) requests that the Court strike defendants'

8  declarations as redundant and inconsequential under Federal Rule of Civil Procedure

9  12(f). Dkt. 43, 45. For the reasons set forth herein, the Court denies plaintiff's motion to

10  strike.

11        The function of Fed. R. Civ. P. 12(f) is to avoid wasting time and money litigating

12  spurious issues -- by dismissing those issues prior to trial. *Whittlestone, Inc. v. Handi-*

13  *Craft Co.*, 618 F.3d 970, 973-74 (9th Cir. 2010). The language of Rule 12(f) limits its

14  applications to defenses in a pleading. Fed. R. Civ. P. 12(f). A pleading is defined as:

15  "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim

16  designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint;

17  (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an

18  answer." Fed. R. Civ. P. 7. If the motion is directed to one of these pleadings, then the

19  Court analyzes whether the issue sought to be stricken is: "(1) an insufficient defense;

20  (2) redundant; (3) immaterial; (4) impertinent; or (5) scandalous." *Whittlestone, Inc,* 618

21  F.3d at 973-74.

22        In this case, plaintiff moves to strike declarations in support of defendants' own

23  motion for summary judgment, and the same declarations submitted in support of

24

25

1    defendants' opposition to Foremost's motion for summary judgment. Yet these

2    declarations are not pleadings, and Fed. R. Civ. P. 12(f) is therefore inapplicable.

3           Even if the Court considered plaintiff's motion to strike as a motion relating to

4    inadmissibility of evidence, the motion would be denied. Plaintiff argues these

5    declarations should be stricken because they conflict with the police reports and other

6    evidence in the record. Dkt. 43 at 2. This argument goes to the weight and credibility of

7    the witness testimony. The Court cannot weigh evidence, draw inferences from facts, or

8    decide credibility on a motion for summary judgment. *Anderson*, 477 U.S. at 255.

9           Further, plaintiff argues that Mr. Hubbard's declaration should be stricken

10   (presumably as being more prejudicial than probative under Fed. R. Ev. 403) because

11   he has no experience in accident reconstruction, or experience with impaired drivers or

12   traffic investigations. Dkt. 43 at 3. Although evidence presented with respect to

13   summary judgment motions need not be in the exact form that would be admissible at

14   trial, the proponent of the evidence is required to "set out facts that it will be able to

15   prove through admissible evidence." *Norse v. City of Santa Cruz,* 629 F.3d 966, 973

16   (9th Cir. 2010).

17          In this case, Mr. Hubbard's declaration is not being offered by the defendants as

18   expert testimony under Fed. R. Ev. 702-705. The defendant's declaration from Mr.

19   Hubbard provides testimony regarding the movement of a vehicle driven by an

20   intoxicated driver that Mr. Hubbard states he observed. Dkt. 24. A percipient witness

21   need not be an expert to testify regarding conduct observed; his background and

22   experience may be considered by the jury as a credibility factor, but it is not a reason to

23   exclude the evidence for purposes of summary judgment. This ruling is only for

24

25

purposes of summary judgment and does not prevent plaintiff from objecting to evidence in a motion in limine before trial or from making an objection during trial. *See Norse*, at 974-975 (district court was required to "rule on evidentiary objections material to its summary judgment ruling").

Plaintiff's motion to strike defendants' evidence is denied.

## B. Estoppel

The defendant argues plaintiff is estopped from asserting there was only one accident under the UMBI policy, when plaintiff already provided coverage under the PIP policy. Under RCW 48.22.030, there is a strong public policy to ensure coverage for innocent victims of drivers who are uninsured; UIM coverage is a "floating layer" above the available limits of any insurance policy held by the tortfeasor. *Fisher v. Allstate Ins. Co.,* 136 Wn.2d 240, 244 (1998); *Cherry v. Truck Insurance Exchange,* 77 Wn. App. 557, 561 (1995).

The defense of estoppel requires the defendants to show: (1) "an admission, statement, or act inconsistent with the claim" that plaintiffs asserted at a later time; (2) the defendant reasonably relied on plaintiff's admission, statement or act and defendant took action "on the faith of such admission, statement, or act," and (3) defendants were injured as a result of allowing plaintiff to "contradict or repudiate such admission, statement, or act." *Saunders v. Lloyd's of London,* 113 Wn.2d 330, 340 (1989). The courts disfavor estoppel, and the [party asserting estoppel] is required to prove it by "clear, cogent, and convincing evidence." *Shelcon Constr. Grp., LLC v. Haymond,* 187 Wn. App. 878, 902 (2015). "Equitable estoppel is a question for the trier of fact, unless only one reasonable inference can be drawn from the evidence." *Id.*

The "injury" element requires the defendant "to show a detrimental change of position based upon the [other party's] representation." *Silverstreak, Inc. v. Washington State Dept. of Labor and Indus.,* 159 Wn.2d 868, 889 (2007). And, injury may also be found if a party's act or omission becomes the basis for a legal dispute in the matter before the court. *East Lake Water Ass'n v. Rogers,* 52 Wn. App. 425, 430 (1988).

Estoppel or waiver should not be applied if it would result in "coverage or restrictions on the coverage be[ing] extended by the doctrine of waiver or estoppel." *Shows v. Pemberson,* 73 Wn. App. 107, 111 (1994) (quoting *Carew, Shaw & Bernasconi, Inc. v. General Cas. Co. of Am.,* 189 Wash. 329, 336 (1937). There are limited circumstances where this rule would not apply (e.g. insured justifiably relies on statements or conduct of insurer and but for estoppel, the entire policy would have been forfeited). *Shows v. Pemberson,* 73 Wn. App. at 112.

For example, if an insurer breaches an important benefit of the insurance contract, the court may consider bad faith estoppel and if all the elements are established by the insured, the insurer will be estopped from denying coverage. *Safeco Ins. Co. of America v. Butler,* 118 Wn.2d 383, 394-395 (1992). To prevail on a claim of bad faith estoppel, the insured must prove: (1) the insurer acted in bad faith; (2) if the insured proves bad faith by a preponderance of the evidence, then there is a presumption of harm; (3) if the insurer shows by a preponderance of evidence its acts did not harm or prejudice the insured, then the presumption is rebutted; and (4) "if the insured prevails on the bad faith claim, the insurer is estopped from denying coverage." *Id.* at 394. Whether an insurer acted in bad faith is a question of fact – and whether the acts of the insurer prejudiced the insured is also a question of fact. *Id.* at 395-396.

1   All of these issues concerning estoppel involve genuine disputes of material

2   facts, and therefore are inappropriate for summary judgment. Concerning traditional

3   estoppel, the defendants would be required to establish that Foremost made an

4   admission, statement or act that was inconsistent with a position taken later. But the

5   plaintiff points out, the law concerning UIM allows the insurer to step into the shoes of

6   the un- or under-insured motorist and assert defenses the alleged tortfeasor would have

7   been able to assert. The insured must prove, concerning bad faith estoppel, that the

8   insurer acted in bad faith; whether harm or prejudice is presented on these facts would

9   also be a jury question; and the defendant would need to establish the elements of

10   estoppel by clear, cogent, and convincing evidence. This is a heavy burden of proof,

11   and there are genuine disputes of material fact that should be decided by the jury;

12   therefore the Court will not grant summary judgment.

13        C. <u>Waiver</u>

14        According to defendants, plaintiff waived their right to contest coverage because

15   they paid the PIP claim and did so on the basis that two accidents happened.

16   Defendants assert that "there is no other reasonable interpretation of Foremost's

17   actions except that it intended to waive the right to contest the number of accidents for

18   coverage purposes." Dkt. 32, Defendants' Motion for Summary Judgment, at 7.

19        Under Washington law, an insurer will be found to have waived a right under the

20   contract if it has "voluntarily and intentionally relinquished a known right or . . .their

21   conduct 'warrants an inference of the relinquishment of such right.'" *Saunders v. Lloyd's*

22   *of London,* 113 Wn.2d 330, 339-340 (1989) (quoting *PUD 1 v. WPPSS,* 104 Wn.2d 353,

23   365 (1985). To prevail, the party asserting waiver must show the insurer made a

24

25

ORDER DENYING MOTIONS FOR SUMMARY
JUDGMENT - 10

knowing and conscious decision to relinquish the right, and a person must know certain conduct would have the effect of relinquishing the right; "conduct giving rise to a waiver argument cannot be consistent with any other interpretation than intent to waive". *Id.* at 340 (quoting *PUD 1 v. WPPSS,* at 365). A waiver by conduct must be an unequivocal act that evidences an intent to waive. *American Safety Cas. Ins. Co. v. City of Olympia,* 162 Wn.2d 762, 771 (2007).

Although the PIP payment was based on a two-accident assessment, this fact, standing alone, does not prove an unequivocal intent to waive for purposes of the UMBI portion of the policy. The plaintiff would need to show the insurer made a knowing and conscious decision to relinquish the right to challenge whether there was one accident, or two accidents under the UMBI portion of the policy. As the defendant observes, the law concerning UIM allows the insurer to step into the shoes of the un- or under-insured motorist and assert defenses the alleged tortfeasor would have been able to assert. It is possible that plaintiff would present facts to a jury that the conduct was unequivocal, but this is a genuine question or material fact and therefore the Court cannot decide this issue on summary judgment.

D. Number of Accidents

Plaintiff's motion for summary judgment requests that the Court find as a matter of law, there was only one accident for purposes of insurance coverage. Dkt. 10. Defendants oppose plaintiff's motion for summary judgment, arguing that a reasonable jury could find more than one accident for purposes of insurance coverage. Dkt. 21.

Defendants' motion for summary judgment requests that the Court find as a matter of law, there was two accidents for purposes of insurance coverage. Dkt. 32.

1    Plaintiff has opposed defendants' motion arguing that only one accident occurred for

2    purposes of insurance coverage. Dkt. 45.

3         Because genuine disputes of material fact exist regarding the number of

4    accidents, both motions for summary judgment are denied.

5         Under Washington law, all injuries or damage occurring from "a single

6    'proximate, uninterrupted, and continuing cause' must be treated as arising from a

7    single accident." *Pemco Mut. Ins. Co. v. Utterback*, 91 Wn. App. 764, 768 (1998)

8    (quoting *Truck Ins. Exch. v. Rhode*, 49 Wn.2d 465, 471 (1956)). If each collision has its

9    own separate proximate cause, then they are considered separate accidents for

10   purposes of insurance coverage, "even if the two accidents occurred coincident, or

11   nearly coincident, in time." *Greengo v. Public Emples. Mut.l Ins. Co.*, 135 Wn.2d 799,

12   813-814 (1998).

13        To determine the number of accidents for insurance coverage purposes, the

14   Court must look to the number of causes.  *Transcon. Ins. Co. v. Wash. Pub. Utils.*

15   *Districts' Util. Sys.*, 111 Wn.2d 452, 467 (1988) ("[T]he number of triggering events

16   depends on the number of causes underlying the alleged damage and resulting

17   liability.") (citing with approval *Liberty Mut. Ins. Co. v. Rawls*, 404 F.2d 880, 881 (5th Cir.

18   1968) (finding two occurrences when the driver struck two cars, but gained control

19   between the first and second impact)); see also, *Greengo v. Public Emples. Mut.l Ins.*

20   *Co.*, 135 Wn.2d 799, 813-814 (1998) ("Where there were two collisions, we look to see

21   if each has its own proximate cause. If so then there are two accidents.").

22        In *Truck Ins. Exch. v. Rohde*, a driver negligently drove over the center line into

23   oncoming traffic hitting a motorcycle, causing the car to turn counterclockwise colliding

24

25

ORDER DENYING MOTIONS FOR SUMMARY
JUDGMENT - 12

with two other motorcycles. 49 Wn.2d at 467. The Court held that there was only one accident because there was one proximate, uninterrupted and continuous event that caused all the injuries and damages. *Id.* at 473.

In *Pemco Mut. Ins. Co. v. Utterback*, a driver drove over a curb hitting a pedestrian and attempting to reverse, the vehicle lurched forward hitting the pedestrian a second time. 91 Wn. App. at 766. The court found that due to the continuity, proximity in time and location of the events and because the drive never regained control of the situation between impacts, there was only one accident. *Id.* at 772.

In *Greengo v. Public Emples. Mut. Ins. Co.*, the plaintiff was injured when the vehicle in which she was a passenger rear-ended another vehicle as a third vehicle rear-ended plaintiff's vehicle. 135 Wn.2d at 803. The police report of the events indicated that two drivers were separately negligent because they were following the other car too closely. *Id.* at 815. The Court overturned a summary judgment where the trial court ruled there was only one collision, because if the events occurred as described in the police report, each collision had its own separate proximate cause – each driver's negligence in following the vehicle in front of them too closely. *Id.*

It is undisputed in this case that there were at least two collisions between the intoxicated drivers' vehicle and the defendants' vehicle. Plaintiff argues that based on the police report, there was only one accident because the intoxicated driver did not regain control of the vehicle between the collisions. Dkt. 10 at 8. Further, plaintiff contends that the collisions occurred in quick succession, without interruption and as a result of one proximate cause – the intoxicated drivers' negligence. *Id.*

1    Defendants have provided declarations stating that they recall *three* collisions.

2   Dkt. 22, Declaration of Diana Andrade; Dkt. 23, Declaration of Erik Guillen. Ms. Andrade

3   asserts that she "noticed in my rearview mirror the other car coming up really fast

4   behind us. I yelled, 'Babe!' to get my husband's attention. I felt the first impact push us

5   forward really hard. There was a small gap in time and then there was a second

6   impact." *Id.* at 2. She also asserts: "I started screaming about why the other driver was

7   doing this to us and what was happening. I felt a third impact and heard the car

8   accelerating away also within a short period of time." *Id.* Mr. Guillen asserts that "my

9   wife made a surprised comment. There was a loud boom and our car was violently

10  pushed forward. I turned around and looked between the seats to see what happened

11  and to check on our daughter. I could see the other car still coming. There was a

12  second impact." Dkt. 23, at 2. Mr. Guillen states that he heard Ms. Andrade screaming,

13  and he tried to tell her to move their car out of the way; then he heard "the other car's

14  engine revving and it sounded like it was accelerating." *Id.* Mr. Guillen asserts he felt a

15  third impact "as the other car drove away". *Id.*

16    Defendants also submitted the declaration of John Hubbard – a witness to the

17  collision. Dkt. 24. Mr. Hubbard testified to witnessing two collisions. *Id.* Mr. Hubbard

18  states that "[t]here was time in between the first impact and the second impact for the

19  driver of the at-fault car to have stopped. There was time for him to make a decision".

20  *Id.* at 2. Mr. Hubbard asserts that it appeared to him the driver of the at-fault car was in

21  control of the vehicle and the situation when "[t]he driver chose to accelerate hard away"

22  and collided with defendants' car a second time. *Id.*

23

24

25

1    Further, defendants note that, according to the police investigation and the

2  intoxicated driver's crash data retrieval system, data shows that leading up to the first

3  impact, the brake at first was not applied, and then the brake was applied; leading up to

4  the second impact, the brake initially was on but then the break was off before the

5  second impact happened. Dkt. 25, Declaration of Benjamin P. Melnick; Dkt. 25-1, Police

6  Report at 4-5; Dkt. 25-2, Crash Data Retrieval File, at 6, 12.

7    Based on the evidence in the record, there appears to be a genuine dispute of

8  material facts in the case. There is conflicting evidence in the record regarding whether

9  there is more than one cause of each collision -- whether the collisions occurred as a

10 continuous uninterrupted event caused by the driver's negligence or whether the

11 subsequent collisions after the initial collision occurred as a result of the driver's

12 intentional attempt to flee the first collision. As in *Greengo v. Public Emples. Mut.I Ins.*

13 *Co.*, 135 Wn.2d 799, 813-814 (1998), a reasonable jury weighing all the evidence could

14 resolve this dispute in favor of either party.

15   The Court denies both motions for summary judgment on the number of

16 accidents in this case because genuine questions of material fact remain.

CONCLUSION

18   For the reasons set forth herein, both motion for summary judgment are

19 DENIED. Dkt. 10, 32.

20   Dated this 15th day of November, 2022.

Theresa L. Fricke
United States Magistrate Judge

ORDER DENYING MOTIONS FOR SUMMARY
JUDGMENT - 15